# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS ALBERTO PITA SANTOS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1869 |
| | § | |
| EVERGREEN ALLIANCE GOLF | § | |
| LIMITED, LP, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

The plaintiff, Luis Alberto Pita Santos, sued his former employer, Evergreen Alliance Golf Limited, LP ("EAGL"), the Texas Workforce Commission, and the Equal Employment Opportunity Commission alleging discrimination on the basis of race and national origin, retaliation, and conspiracy, among other claims. The claims against the EEOC were dismissed for lack of subject-matter jurisdiction. (Docket Entry No. 20). The claims against the TWC were dismissed because it is a state agency immune from suit in federal court under the Eleventh Amendment. (Docket Entry No. 38). After giving Pita Santos several opportunities to amend his complaint, this court liberally construed the allegations and retained for further consideration the claims that Pita Santos was terminated from his job by EAGL because of his national origin and because of retaliation. This court dismissed the retaliation claim on February 24, 2009. (Docket Entry No. 46).

EAGL has now moved for summary judgment on the national-origin discrimination

claim. (Docket Entry No. 51). EAGL argues that even assuming Pita Santos has made a *prima facie* showing of discrimination, it has presented a legitimate nondiscriminatory reason for the termination decision and Pita Santos has not identified or submitted any evidence of pretext. Pita Santos has filed several documents in response, including Proof 95, (Docket Entry No. 52), Proof 96, (Docket Entry No. 53), Proofs 97, 98, 99 (Docket Entry No. 54), Proof 100, (Docket Entry No. 55), Proof 101, (Docket Entry No. 56), Proof 102, (Docket Entry No. 57), Proof 103, (Docket Entry No. 58), Proof 104, (Docket Entry No. 59), Proof 106, (Docket Entry No. 60), Proof 107, (Docket Entry No. 61), Exhibits, (Docket Entry No. 64), Proof 117, (Docket Entry No. 65), and Exhibits, (Docket Entry No. 66). EAGL filed a reply in support of its motion for summary judgment, (Docket Entry No. 63).

Based on careful review of the pleadings, the motion, responses, and reply, and the applicable law, this court grants EAGL's motion for summary judgment. The reasons are explained below.

**I.   Background**

EAGL owns and operates the Cinco Ranch Golf Course located in Katy, Texas. Pita Santos began working at Cinco Ranch on April 10, 2006 as an equipment operator and landscaper. His primary responsibilities included maintenance work and replacing ice and water around the golf course. Pita Santos was hired by Wade Warms, Superintendent of Cinco Ranch, and Chris Teafatiller, Assistant Superintendent. Warms and Teafatiller were Pita Santos's supervisors during his employment at Cinco Ranch.

The record shows that beginning in the spring of 2007, Pita Santos had a series of

confrontations with his supervisors. First, Pita Santos was discovered collecting golf balls from ditches on the golf course while "on the clock." (Docket Entry No. 51, Ex. A, Affidavit of Wade Warms, at ¶5). Warms gave him a verbal reprimand and told Pita Santos not to spend his time going into the ditches to collect golf balls. In response, Pita Santos became "extremely angry," "loud and obstinate," "called all the witnesses liars," and acted in an "inappropriate and unprofessional" manner. (*Id* at ¶5). On a different occasion, Pita Santos was reprimanded for not driving the golf carts on the path and causing ruts in the fairways of the course. When his supervisors told him not to drive the carts on the fairways, Pita Santos responded in a similarly loud and angry fashion. (*Id* at ¶6). On Friday, May 25, 2007, Pita Santos confronted Teafatiller and claimed that he had not been paid enough. (Docket Entry No. 51, Ex. B, Affidavit of Chris Teafatiller, at ¶ 7). Pita Santos had taken two vacation days during the previous pay period. EAGL paid him for those days, but the pay was recorded under a separate line item on his pay stub. According to Teafatiller, Pita Santos "aggressively confronted" him about the amount of the pay check in front of other employees. (*Id* at ¶ 7). Teafatiller did not report the incident to Warms, the superintendent, who was not at work that day. On Monday, May 28, 2007, Warms returned to work. Teafatiller had the day off. At the end of the work day, Pita Santos told Warms that he would no longer perform "his assigned tasks of ice and water maintenance." (Docket Entry No. 51, Ex. A, Warms Affidavit, at ¶7). According to EAGL, Santos was hired "primarily . . . for ice and water facility maintenance." (*Id* at ¶ 3). Warms told Pita Santos to go home and that they would talk about it in the morning. (*Id.*, at ¶ 7). The next morning, Warms assigned

Pita Santos to do landscaping work around the lake. When Teafatiller returned to work, he told Warms about Friday's incident and Pita Santos's behavior. Based on the incidents about the golf balls and golf carts and Pita Santos's behavior on May 25 and May 28, Warms decided to terminate Pita Santos's employment on May 30, 2007.

Pita Santos's initial complaint, filed on June 11, 2008, was a 120-page filing with rambling and unconnected statements. Pita Santos appeared to allege that he was fired based on national-origin discrimination and in retaliation for protected activities. (Docket Entry No. 1). EAGL moved to dismiss and to require a more definite statement. On July 28, 2008, this court ordered Santos to file an amended complaint consistent with the Rule 8 requirements. (Docket Entry No. 13).

Pita Santos filed an amended complaint on August 13, 2008. (Docket Entry No. 15). Although the first amended complaint was shorter, it did not provide a short and plain statement of the claims against the defendants. Pita Santos did not allege what conduct by the defendants was improper or unlawful. Instead, Pita Santos made "continuing allegations and complaints against many offenders entrepreneurs Eagles with a plot increased number of rulers, criminals and TWCCRD, EEOC, offices of Texas San Antonio, Dallas and Central Texas (perhaps some already deposed or replaced) to conceal a increased number of violations, crime and damage types of labor and civilians to mi [sic] person for over 16 months, and having provided ample proof and evidence, I reiterate my complaint so categorical, emphatic and concise against" EAGL, TWC, and EEOC. (*Id.*). Pita Santos alleged that EAGL is "guilty of crimes of discrimination and retaliation" (*Id.*). Pita Santos

further alleged that EAGL discriminated against him based on the fact that he was "1) Spanish-Cuban who speaks and understands very little English; 2) Professor university graduate of History and Political Economy; 3) Leading express and tortured by the tyranny in Cuba for dissent and opposing his facing; 4) Defender of Human Right for my homeland, both on the island and in exile; 5) Scientific and innovative certain educational ane [sic] methodological advances that will be useful for the progress and welfare of U.S. and the world; 6) Excellent job, insurmountable for the rest of my colleagues in the maintenance department in Cinco Ranch and at any other centers where he worked above and beyond; 7) Revindicative of human rights, civil and labor mine and those of my colleagues at work." (*Id.*)

On September 9, 2008, EAGL renewed its motion to dismiss and again moved to require a more definite statement. At the Rule 16 initial pretrial conference on September 26, 2008, the defendants appeared by telephone. On September 30, 2008, Santos filed a document titled "Total Absence of My Legal Contenders." (Docket Entry No. 28). In that document, Santos contended the defendants did not appear in person at the initial conference because they recognized the failure of their arguments and "preferred to avoid the confrontation of a very humiliating defeat." (*Id.*). During the initial conference, EAGL reiterated their request for a more definite statement. This court again ordered Pita Santos to file a short, plain statement of his claims against EAGL.

Pita Santos filed another "modified" statement. (Docket Entry No. 29). On October 9, 2008, EAGL moved to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure

5

for failure to comply with Rule 8 and this court's orders.  Alternatively, EAGL moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim on which relief can be granted under Rule 12(b)(6).  (Docket Entry No. 31).  After EAGL moved to dismiss, Pita Santos filed documents entitled "Proclaim Plan of Peaceful Protest," (Docket Entry No. 32), "Abuse of Power," (Docket Entry No. 34), "A World Public Opinion," (Docket Entry No. 35), and "Proofs," (Docket Entry No. 37).

With respect to the claims against EAGL, this court found that "[l]iberally construed, the second amended complaint . . . alleges discrimination on the basis of national origin ("Being a foreigner, Spanish-Cuban").  It also appears to allege retaliation for protected activity ("Claimed human rights, civil and industrial mine, and those of my colleagues at work"), but it is not clear whether this activity occurred before or after Pita Santos was fired."  (*Id.*).  This court denied EAGL's motion to dismiss as to the national-origin discrimination claim but granted the motion as to the retaliation claim.  (*Id.*).  After Pita Santos was allowed to amend to attempt to cure the pleading problems with the retaliation claim, this court granted EAGL's renewed motion to dismiss the retaliation claim.  EAGL's motion for summary judgment on the national-original discrimination claim followed.

## II.     The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d

253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the

nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.    Analysis

Pita Santos claims that EAGL discriminated against him based on national origin by terminating his employment. EAGL asserts that Pita Santos was fired for multiple acts of insubordination and that his national origin played no part in his termination.

Under Title VII, employers are prohibited from discriminating on the basis of national origin. 42 U.S.C.A. § 2000e-2(a). A plaintiff must carry the initial burden of establishing a *prima facie* case of discrimination on the basis of national origin. *Panlilio v. Dallas Indep. Sch. Dist.*, 643 F.2d 315, 317 (5th Cir. 1981). To establish a *prima facie* case of discrimination based on national origin, plaintiff must prove that he: "(1) was part of a protected class, (2) was qualified for the position held, (3) suffered an adverse employment action, (4) was treated differently than others similarly situated." *Abarca v. Metropolitan Transit Authority*, 404 F.2d 938 at 941 (5th Cir. 2005)(citing *Rios v. Rossotti*, 252 F.3d 375 at 378 (5thCir. 2001)). A plaintiff will not satisfy the "qualified for position held" element of the test if the defendant can show that he was not "performing his job at a level that met his employers legitimate expectations at the time of his discharge." *McClaren v. Morrison Mgmt. Specialists, Inc.*, 316 F.Supp.2d 489, 497–98 (W.D. Tex. 2004); *See also Detz v. Greiner Indus. Inc.*, 346 F.3d 109, 119 (3rd Cir. 2003); *Johnson v. S. Mississippi Home Health*, 158 F.3d 584, 1998 WL 648526, at *1 (5th Cir. 1998) (unpublished table decision). Once a plaintiff has made this showing, the burden shifts to the employer to present a legitimate, nondiscriminatory reason for the termination. *Frank v. Xerox Corp.*, 347 F.3d

130, 137 (5th Cir. 2003). If the employer does so, the burden shifts back to the plaintiff to show that the defendants' proffered reason for the termination is not the real reason. *Id.* If the plaintiff fails to make such a showing, then the claim fails. *Id.*

In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Taylor v. Peerless Industries*, Inc., 2009 WL 837326, at *5 (5th Cir. Mar. 30, 2009) (citing *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004)). The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated on the basis of the plaintiff's membership in the protected class. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

It is undisputed that Pita Santos is part of a protected class and that he suffered an adverse employment action. Pita Santos asserts that he was qualified for his job and that he was treated differently from others in his position. EAGL asserts that Pita Santos has not submitted evidence of similarly situated employees whose employment was not terminated. EAGL submitted affidavit testimony that other Cinco Ranch maintenance workers have been fired for insubordination. (Docket Entry No. 51, Ex. A, Affidavit of Wade Warms, at ¶ 12).

To establish the fourth element of the *prima facie* case, a plaintiff may present "circumstantial evidence that she has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citation omitted). In disparate treatment cases involving employee misconduct

9

and discipline, a "plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) (internal quotations omitted); *see also Berquist v. Wash. Mut. Bank*, No. 05-20956, 2007 WL 2007333, at *7 (5th Cir. Jul. 12, 2007) ("In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for the employees to be considered similarly situated."). "[P]ut another way, the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions," *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 209 (5th Cir. 2004), and the comparator employees' position in the organization — e.g., job title, duties, supervisor — should be roughly the same. *See*, *e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007). Pita Santos has failed to identify any support for an inference that other EAGL employees were treated more favorably under "nearly identical circumstances." There is no allegation or evidence in the record of employees outside the protected class with similar job responsibilities who engaged in similar misconduct but who were not fired. To the contrary, the record evidence shows that other maintenance employees at Cinco Ranch who engaged in insubordination were also

terminated.

Even assuming that Pita Santos had established a *prima facie* case, EAGL has offered a legitimate nondiscriminatory reason for the termination. The record shows that Pita Santos was fired for multiple acts of insubordination and for refusing to perform specific parts of his job. Cases treat such acts as a legitimate nondiscriminatory basis for job termination. *See Aldrup v. Caldera*, 274 F.3d 28 (5th Cir. 2001) ("Insubordination on three separate occasions was sufficient nondiscriminatory reason for . . . termination of Title VII plaintiff's employment); *Chaney v. New Orleans Pub. Facility Mgmt.*, 179 F.3d 164, 167 (5th Cir. 1999)(concluding that the failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action).

Pita Santos has failed to point to any evidence supporting the inference that the stated reasons for his termination were a pretext for discrimination. Although a court is not required to ferret through the record to locate summary-judgment evidence for which the parties do not provide a citation,[1] this court did search the voluminous filings by Pita Santos and was not able to locate any evidence of pretext. Pita Santos's unsubstantiated assertions that the termination was based on his national origin are insufficient to survive summary

---

[1] Rule 56 does not obligate this court to search for evidence to support a party's motion for, or opposition to, summary judgment. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) ( "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.,* 695 F.2d 839, 846-47 (5th Cir.1983) ("Judges are not ferrets!"); Albrechtsen v. Bd. of Regents, 309 F.3d 433, 436 (7th Cir.2002) ( "'Judges are not like pigs, hunting for truffles buried in' the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

judgment on this claim.  *See Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (noting that conclusory allegations and unsubstantiated assertions are insufficient to overcome summary judgment).  Moreover, EAGL is entitled to the same-actor inference of nondiscrimination.  Warms hired Pita Santos in April 2006 and fired him in May 2007, after the incidents in which he refused to do certain work and had angry confrontations with his supervisors.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  The record provides no basis to conclude that discrimination was the reason for Pita Santos's termination.

EAGL's motion for summary judgment on the national-origin discrimination claim is granted.

## IV. Conclusion

EAGL's motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on June 30, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge